# Haskell's Estate.

*Will—Widow—Election to take under will—Promissory note—Evidence.*

Testator, an illiterate man, made his will, and left it with his counsel, having first in the presence of the latter sealed it up in a large envelope and with it a smaller envelope also sealed, which he said would show what was to be done with it.    After his death the envelope was opened containing the will and the small envelope.    Upon the small envelope was written

"Personal and private. If I die first to be delivered to Phoebe, if Phoebe dies first, to be delivered to me." Phoebe was his wife. On the day after the funeral the will and sealed envelope were taken to the widow, the will was read to her, and the small envelope handed to her. It contained two papers, one a note under seal payable to the widow under her maiden name, one day after date (nearly nine years before his death) for over $3,000. This amount represented money of the widow's that she had put in her husband's hands at or before her marriage. The other paper was a memorandum in these words: "Pheobe, according to agreement you are to burn this note, as I am ded, if you except under my will," signed by testator. The will left the income of the whole estate to the widow for life; when the inventory was taken she was informed of the value; and she received and accepted the income without any claim on the note or for the debt which it represented during the eight months that she survived. After her death the note was presented by her administrator as a claim against her husband's estate. *Held,* that the widow had accepted under the will with such knowledge of the note and memorandum as would estop her and her administrator from claiming on the note.

Argued May 1, 1905. Appeal, No. 281, Jan. T., 1904, by Jennie M. Smith, from decree of O. C. McKean Co., Dec. T., 1903, No. 8, dismissing exceptions to auditor's report in Estate of William Haskell, deceased. Before MITCHELL, C. J., DEAN, BROWN, MESTREZAT and POTTER JJ. Reversed.

Exceptions to report of George A. Berry, Esq., auditor. The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in reversing the auditor.

*John G. Johnson,* with him *James George* and *Rufus B. Stone,* for appellant.—The order appealed from is a reversal of the auditor appointed to report distribution. He is overruled upon a question of fact. Neither misconduct on his part nor gross mistake nor fraud is disclosed. In such case, it has been held with uniformity that the report of the auditor should prevail: Platt-Barber Co. v. Groves, 193 Pa. 475 ; Dutton's Estate, 181 Pa. 426 ; Huckestein v. Kaufman, 173 Pa. 199 ; Hess's Estate, 150 Pa. 346 ; Scheppers' Appeal, 125 Pa., 598 ; Gilbert's Appeal, 78 Pa. 266 ; Pittsburg's Appeal, 70 Pa. 142.

A delivery not in accordance with the intention of the decedent is of no effect: Critchfield v. Critchfield, 24 Pa. 100 ; Duraind's Appeal, 116 Pa. 93 ; Scott v. Reed, 153 Pa. 14 ; Galbraith v. Zimmerman, 100 Pa. 374.

*F. D. Gallup* and *Thomas F. Richmond*, with them *V. B. Bouton* and *Sheridan Gorton*, for appellee.—The Supreme Court can and has in many cases reversed both the auditor and the court below where the evidence shows that their findings of fact or conclusions of law were against the weight of the evidence, or where an unjust result is reached: Miller's Appeal, 102 Pa. 544; Fessenden's Estate, 170 Pa. 631; Hindman's Appeal, 85 Pa. 466; Bachman's App., 38 Legal Intell. 393.

William Haskell did not hold these moneys as an ordinary debtor, but as a trustee; and a trustee surely cannot dispose of the estate of his cestui que trust or appropriate it to his own use: Abrahims's Estate, 19 W. N. C. 450; Dougherty v. Snyder, 15 S. & R. 84.

OPINION BY MR. CHIEF JUSTICE MITCHELL, June 22, 1905:

Haskell made his will, and left it with his counsel, having first in the presence of the latter sealed it up in a large envelope, and with it a smaller envelope also sealed, which he said would show what was to be done with it.

After his death the envelope was opened containing the will and the small envelope. Upon the small envelope was written "Personal and private. If I die first to be delivered to Phoebe, if Phoebe dies first to be delivered to me." Phoebe was his wife. On the day after the funeral the will and sealed envelope were taken to Phoebe Haskell, the will was read to her by one of the executors, and the small envelope handed to her. It contained two papers, one a note under seal, payable to Phoebe McDowell one day after date (nearly nine years before his death), for $3,120. It was admitted that Phoebe McDowell was the widow and that the amount of the note, $3,120, represented money of hers that she had put in his hands at or before her marriage. The other paper was a memorandum in these words: "Phoebe, according to agreement you are to burn this note, as I am ded, if you except under my will. Wm. Haskell." The will left the income of the whole estate to the widow for life; when the inventory was taken she was informed of the value; and she received and accepted the income, without any claim on the note or for the debt which it represented, during the eight months that she survived. After her

death the note was presented by her administrator as a claim against her husband's estate.

So far the facts are undisputed, and both the auditor and the judge agreed that the widow had accepted under the will. They differed, however, as to whether she had accepted with such knowledge of the note and memorandum as would estop her, and, of course, her administrator from claiming on the note. That is the only question in the case.

The auditor on the first hearing took the evidence of the husband of the devisee of the remainder of the estate after the widow's death. He later concluded, however, as did the court, that this witness was not competent, and on the second hearing took further evidence and reported that the widow had accepted with knowledge of the condition. The court reversed this finding and sustained the claim on the view that the burden of proving the fact of knowledge, was on the appellant, legatee, and that the testimony of the only witness who testified affirmatively to the widow's having seen and read the paper, failed to identify it with certainty, and was in other respects unsatisfactory. In this we think he fell into the error of underrating the strong corroborative effect of the undisputed circumstances. The note and the memorandum were in the handwriting of the testator, as was also the indorsement on the small envelope, " Personal and private. If I die first to be delivered to Phoebe," etc. The testator in the presence of his counsel put these papers, so inclosed, in the envelope, with his will, and after his death, the will was read to her and the small envelope handed to her. To suppose that with such an indorsement she did not open the envelope, or opening it did not read the memorandum, is beyond the bounds of credibility. It is not clear that the burden of proof was on the appellant. The testator had the note in possession, there is no evidence that he ever delivered it or that his wife ever had it in her possession during his lifetime, and when it was delivered after his death in the manner shown, it was delivered with a condition and the assertion of an agreement to both of which acceptance under his will was an assent. But even conceding that the burden of proof was on the appellant it was fully met.

The court also found some difficulty on the question whether even if the widow did read the memorandum, she knew that if

she accepted under the will she released her claim, and suggested that the words "if you except under my will" could be read "except to my will" just as readily as "if you accept," etc. But we have no trouble on this point. Considering the illiteracy of the testator as shown in his spelling, and the common confusion among his class of the words accept and except, the proper reading is not at all doubtful. The whole intent and sense of the memorandum are against the suggested change.

Lastly, it is argued that the widow had not mental capacity to understand the meaning of the memorandum. It is sufficient to say that this is wholly inconsistent with the intelligent acceptance of the provisions of the will which both the auditor and the judge concurred in finding as a fact.

On careful review of the whole case we are of opinion that the weight of the evidence is clearly with the auditor's finding. Decree reversed and distribution directed to be made in accordance with the report of the auditor. All costs to be paid by appellee.